

# The Attorney General of Texas

November 4, 1981

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable W. J. Estelle, Jr.
Director
Texas Department of Corrections
Huntsville, Texas 77340

Dear Mr. Estelle:

Opinion No. MW-381

Re:   Whether Texas Department of Corrections inmate may review his own medical records

You have requested our opinion as to whether an inmate of the Texas Department of Corrections [hereinafter TDC] is entitled to review his own medical records held by the department.

It has been suggested that an inmate might have a constitutional or common law right to inspect his own medical records. In Paine v. Baker, 595 F.2d 197 (4th Cir.), cert. denied, 444 U.S. 925 (1979), the court considered a similar claim. In that case, a statute prohibited disclosure of prison records except to certain named persons. Although the opinion notes that an inmate has a limited right, grounded in due process, to have erroneous information expunged from his prison file, it emphasizes that there is "no constitutional requirement that a prisoner have access to his file." 595 F.2d at 200, 201.

As to an inmate's common law right of access, we are aware that Attorney General Opinion MW-95 (1979) found that an individual has a common law right to review his own criminal history record information held by a law enforcement agency. That opinion, however, was based largely upon the existence of federal regulations granting to an individual a right of special access to criminal history record information about him in the custody of an agency which is the recipient of federal funds. Since no federal regulations require the disclosure of prison medical records to an inmate, we do not believe that the reasoning of Attorney General Opinion MW-95 is applicable to your inquiry.

Neither do we believe that Hutchins v. Texas Rehabilitation Commission, 544 S.W.2d 802 (Tex. Civ. App. - Austin 1976, no writ), requires a different result. In that case, the court held that a former patient of the rehabilitation commission had a common law right to inspect her own records. Likewise, Morris v. Hoerster, 377 S.W.2d 841 (Tex. Civ. App. - Austin 1964, no writ), dealt with access to state hospital records by a former patient. In the situation you

pose, the inmate is presently incarcerated in a facility of the Department of Corrections.  In view of the potentially harmful effects upon the rehabilitation of an inmate which disclosure of his records might produce, we decline to extend the rationale of <u>Hutchins</u>, to include persons presently incarcerated, nor do we pass on the availability of such records to former inmates.

As this office has frequently indicated, the Open Records Act, article 6252-17a, V.T.C.S.:

> deals primarily with the general public's right to information, and does not provide for a special right of access to the subject of records.

Attorney General Opinion MW-95 (1979).  <u>See also</u> Open Records Decision Nos. 127 (1976); 108 (1975).  Thus, under the Open Records Act, an inmate would have no greater access to his medical file than would any other member of the public.

You first contend that inmate medical records are excepted from disclosure by section 3(a)(1) of the Open Records Act as "information deemed confidential by law," in this case, sections 26 and 27 of article 42.12, Texas Code of Criminal Procedure.  That statute provides:

> Sec. 26.  The Board of Pardons and Paroles shall have general responsibility for the investigation and supervision of all prisoners released on parole and to mandatory supervision. For the discharge of this responsibility, there is hereby created with the Board of Pardons and Paroles, a Division of Parole Supervision. Subject to the general direction of the Board of Pardons and Paroles, the Division of Parole Supervision, including its field staff shall be responsible for obtaining and assembling any facts the Board of Pardons and Paroles may desire in considering parole eligibility, in establishing a mandatory supervision plan, and for investigating and supervising paroled prisoners and prisoners released to mandatory supervision to see that the conditions of parole and mandatory supervision are complied with, and for making such periodic reports on the progress of parolees and prisoners released to mandatory supervision as the Board may desire.

> Sec. 27.  All information obtained in connection with inmates of the Texas Department of Corrections subject to parole, release to mandatory supervision, or executive clemency or individuals who may be on mandatory supervision or

parole and under the supervision of the division, or persons directly identified in any proposed plan of release for a prisoner, shall be confidential and privileged information and shall not be subject to public inspection; provided, however, that all such information shall be available to the Governor and the Board of Pardons and Paroles upon request. It is further provided, that statistical and general information respecting the parole and mandatory supervision program and system, including the names of paroled prisoners, prisoners released to mandatory supervision, and data recorded in connection with parole and mandatory supervision services, shall be subject to public inspection at any reasonable time.

In our opinion, this provision is applicable only to information obtained by and in the custody of the Division of Parole Supervision. If it were read to apply to all inmate information wherever it is found, it would deny TDC access to information about inmates in its custody. Such an absurd result was obviously not the intent of the legislature. We conclude, therefore, that inmate medical records in the custody of TDC are not excepted from disclosure by section 3(a)(1) of the Open Records Act.

Section 3(a)(8) of the Open Records Act excepts from disclosure:

records of law enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law enforcement agencies which are maintained for internal use in matters relating to law enforcement.

V.T.C.S. art. 6252-17a, §3(a)(8). The TDC probably constitutes a "law enforcement agency" for purposes of section 3(a)(8). See, e.g., Duffin v. Carlson, 636 F.2d 709, 713 (D.C. Cir. 1980) (Federal Bureau of Prisons is a "criminal law enforcement authority"); People v. Scott, 583 P.2d 939, 941 (Colo. Ct. App. 1978) (state penitentiary is a "law enforcement agency"). It does not follow, however, that all TDC records are excepted by section 3(a)(8). Certain records of law enforcement agencies have, for example, been specifically held to be public. See Houston Chronicle Publishing Co. v. City of Houston, 531 S.W.2d 177 (Tex. Civ. App. - Houston [14th Dist.] 1975), writ ref'd n.r.e., 536 S.W.2d 559 (Tex. 1976); Open Records Decision Nos. 216 (1978); 127 (1976). Whether inmate medical records are excepted depends upon whether their disclosure "will unduly interfere with law enforcement and crime prevention." Ex parte Pruitt, 551 S.W.2d 706, 710 (Tex. 1977); Open Records Decision Nos. 252 (1980); 216 (1978). Such a determination must be made on a case-by-case basis by examining each particular record at issue. We note, however, that a member of

the public could not have access to records protected by a common law or constitutional right of privacy unless the right is waived. See Open Records Decision Nos. 258, 262 (1980).

Although our previous discussion applies to all inmate medical records held by TDC, Senate Bill No. 5, the Medical Practice Act, recently enacted by the first called session of the Sixty-seventh Legislature, is applicable to "[r]ecords of the identity, diagnosis, evaluation or treatment of a patient by a physician that are created or maintained by a physician." V.T.C.S. art. 4495b, §5.08(b), Acts 1981, 67th Leg., 1st C.S., ch. 1, at 31. (Emphasis added). "Physician" includes every person "licensed to practice medicine." V.T.C.S. art. 4495b, §5.08(a). Section 5.08(b) provides that such records "are confidential and privileged and may not be disclosed except as provided in this section." The statute lists seven exceptions relevant to "court or administrative proceedings" under subsection (g) and seven other kinds of exceptions under subsection (h). It is clear, however, that medical records generated by a physician are not generally included within the ambit of public information.

Section 5.08 does, however, grant a patient access to his own medical records held by a physician, subsections (h)(5), (j)(1), and (k), unless "the physician determines that access to the information would be harmful to the physical, mental or emotional health of the patient." V.T.C.S. art. 4495b, §5.08(k). The statute does not except TDC inmates from its definition of "patient." §5.08(m). Thus, as to any medical records of the department which are created or maintained by a physician, an inmate must be permitted access unless the physician makes the determination required in subsection (k). In our opinion, such a determination must be made on a case-by-case basis.

It is our opinion that an inmate of the Department of Corrections, in the circumstances described, is not in general permitted to review his own medical records held by the department by virtue of any special constitutional or common law right of access. He may be able to review such records under the Open Records Act as a member of the public, unless TDC can demonstrate that disclosure will "unduly interfere with law enforcement or crime prevention" under section 3(a)(8) of the act, or unless some other exception applies. With regard to all TDC medical records which are generated or held by a physician, an inmate has a statutory right of access, unless the physician determines that access "would be harmful to the physical, mental or emotional health" of the inmate.

## S U M M A R Y

An inmate of the Texas Department of Corrections, in the circumstances described, is not in general permitted to review his own medical records held by the department by virtue of any special constitutional or common law right of

access.  He may be able to review such records under the Open Records Act as a member of the public, unless TDC can demonstrate that disclosure will "unduly interfere with law enforcement or crime prevention" under section 3(a)(8) of the act.  With regard to all TDC medical records which are generated or held by a physician, an inmate has a statutory right of access, unless the physician determines that access "would be harmful to the physical, mental or emotional health" of the inmate.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Ann Kraatz
Jim Moellinger